## CLAIM XXXV

**THE LACK OF A UNIFORM STANDARD FOR SEEKING THE DEATH PENALTY ACROSS GEORGIA RENDERS PETITIONER'S DEATH SENTENCE UNCONSTITUTIONAL UNDER THE SUPREME COURT'S DECISION IN <u>BUSH V. GORE</u>; THE ARBITRARY ABUSE OF DISCRETION INHERENT IN THE PROSECUTION'S DECISION TO SEEK THE DEATH PENALTY THUS VIOLATED PETITIONER'S RIGHTS TO A FAIR AND RELIABLE DETERMINATION OF SENTENCE AS SECURED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.[57]**

335.   All other Claims and facts in this Petition are incorporated into this Claim as if specifically pleaded herein.

336.   Petitioner was denied the effective assistance of counsel, due process, a fair trial, equal protection, and a fair and reliable sentencing proceeding, by the lack of uniform sentencing standards throughout the State of Georgia, in violation of his rights as guaranteed under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted in all federal and state case law citing to, noting,

---

[57]To the extent that trial counsel failed to object at trial and/or appellate counsel failed to preserve this issue on appeal, they rendered ineffective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

or otherwise relevant to an interpretation of each of these constitutional provisions, as well as any other law set forth throughout the body of this petition. But for these errors, the outcome would have been different.

337    Petitioner moved to preclude the prosecution from seeking the death penalty due to the standard-less and arbitrary manner in which it is sought in Cobb County and in the State of Georgia. The trial court quashed Petitioner's subpoena for evidence, thereby denying him a full and fair hearing. Moreover, it was established that no state standards are set forth either by the Attorney General or any other state body. The purported standards of the District Attorney's office in effect at the time are not standards at all

338.   These standards are framed solely in terms of "preferably" this, and "preferably" that, with absolutely no concrete manner in which to distinguish one case from another. The trial court viewed the issue solely as whether there were guidelines that could be said to have been followed in *this* case—in other words, whether there is any way in which the death sentence sought against petitioner could possibly be rationalized

339.   The District Attorney's decision-making process fails even under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and analogous provisions of the Georgia Constitution.

However, there can be no doubt that no meaningful standards exist to distinguish those cases where the prosecutor seeks a death sentence from those cases where he does not. Because of the prosecution's lack of standards, Petitioner's rights under the Fifth. Sixth, Eighth and Fourteenth Amendments of the United States Constitution and analogous provisions of the Georgia Constitution were violated and his death sentence must be set aside

340. The Georgia death penalty process provides no uniform standard for determining in which cases the state will seek death sentences. The application of this unconstitutional standard to Mr. Presnell's case violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted in all federal case law citing to, noting, or otherwise relevant to an interpretation of each of these constitutional provisions, as well as any other law set forth throughout the body of this petition.

341. When fundamental rights are involved. the Equal Protection Clause of the Fourteenth Amendment requires that there be "uniform" and "specific" standards to prevent the arbitrary and disparate treatment of similarly situated people  *Bush v  Gore*, 531 U.S. 98 (2000).

342. In *Bush v. Gore*, the Supreme Court was confronted with an opinion by the Florida Supreme Court that did not set forth uniform standards in its opinion ordering a recount. The Supreme Court held that such a recount would not respect the "equal dignity owed to each voter." *Id.* at 104.

343. The Georgia death penalty system concerns a right even more fundamental than the right to vote – the right to life. As was true in the Florida recount, Georgia's lack of statewide standards to guide prosecutors in determining which cases warrant seeking the death penalty inevitably leads to the disparate treatment of similarly situated people accused of potentially capital offenses.

344. Those principles require that the method of deciding which defendants may face the death penalty be subject to at least as much scrutiny as the process of counting votes.[58] The need for equality and

---

[58] While the Supreme Court stated that its holding in *Bush v. Gore* was limited to the facts of that case, the principles it announced are sound and must be subject to respect as precedent. The *per curiam* opinion explained the narrow scope of its holding by distinguishing the somewhat unusual situation of a court-ordered statewide recount from an ordinary election. In ordinary elections, the Court said, the Equal Protection Clause does not prohibit counties from developing "different systems for implementing elections." *See Bush*, 531 U.S. at 109. One reason for this distinction is that once ballots have been cast, the "factfinder confronts a thing, not a person," and thus "[t]he search for intent can be confined by specific rules designed to ensure uniform treatment." *Id.* at 106. Also, individual counties

(continued . )

non-arbitrariness when the State seeks to deprive a citizen of his life
outweighs any benefits of unbridled prosecutorial discretion.

345.  Since the right to life is fundamental, when a State implements a death
penalty system, it must establish mechanisms to ensure that the system
values the lives of its citizens equally.  In *Bush*, the Supreme Court noted

---

[58](...continued)
may have "expertise" that justifies letting them choose their own methods of
conducting elections. *Id.* at 109  Another explanation is that "local variety [in
voting machines and procedures] can be justified by concerns about cost, the
potential value of innovation, and so on" whereas a "different order of disparity"
occurs when, after ballots have been cast, physically identical ballots are hand-
counted according to different rules. *Id.* at 134 (Souter, J., dissenting).

These explanations, however, simply do not serve as an adequate basis for
not applying the *Bush* Equal Protection rule to Georgia's death penalty system.
Just as Florida counties can use different voting machines in their elections,
Georgia circuits can certainly have separate prosecutors and can structure those
prosecutors' offices differently, this allows the flexibility demanded by limited
budgets and justified by local expertise, and takes into account the potential for
innovation inherent in a system of local control.  With regard to the Court's
distinction between a "thing" and "person," although it is true that prosecutors
charged with deciding when to seek the death penalty confront people and not
things, this does not diminish the Equal Protection Clause's requirement of non-
arbitrariness.  While it might be easier to design standards about whether to count
"hanging chads" as legal votes, it is certainly possible to write standards to guide
prosecutors in deciding whom to prosecute. *See, e.g., United States Attorneys'
Manual* §9-10.010 et. seq. (1995) (laying out "federal protocol" for capital cases);
U.S  Dep't of Justice, The Federal Death Penalty System  Supplementary Data,
Analysis and Revised Protocols for Capital Case Review (2001),
http://www.usdoj.gov/dag/pubdoc/
deathpenaltystudy htm

that "[having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."[59] By the same reasoning, since the Constitution has ensured the right to life and to the equal protection of the laws, a State may not, by arbitrary and disparate treatment, value one person's life over that of another

346. The duty of this Court to protect against the arbitrary taking of Mr. Presnell's life is heightened by the fact that, unlike the right to vote,[60] the right to life is contained in the text of the Constitution. The Fifth and Fourteenth Amendments provide that neither the federal government nor the states shall deprive any person of "life, liberty, or property" without due process of law. U.S. Const. amend. V; amend XIV, §1. Indeed, the United

---

[59]Bush, 531 U.S. at 104-05.

[60]*In Bush v. Gore* the Supreme Court conceded that the right to vote is not contained in the text of the Constitution. *See id.* at 104 ("The individual citizen has no federal constitutional right to vote for electors for the President of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the electoral college."). The Court, however, granted relief after holding that "[h]istory has favored the voter," and since every state now chooses its electors through a statewide election, "the right to vote as the legislature has prescribed is fundamental " *See id.*

States Supreme Court has long recognized the fundamental nature of the right to life, particularly in the context of the death penalty.[61]

347.   In addition, Georgia's lack of standards to ensure non-arbitrary imposition of the death sentence is sufficient in itself to establish an Equal Protection violation; a showing of intentional discrimination against a protected class is not required.[62]  Unlike these traditional Equal Protection claims of intentional discrimination against a protected class, claims like this one and the one in *Bush* are not based on an individual act of discrimination, but rather challenge a system in which uncontrolled official discretion makes arbitrary and unequal treatment inevitable

348.   Georgia has 159 counties, administratively grouped into 48 and now 49 circuits.  (These circuits are further administratively grouped into 10 judicial districts.)  Each circuit has an elected District Attorney, and it is this prosecutor who decides whether to seek the death penalty in any given case.

---

[61] *See Furman v. Georgia*, 408 U.S. 238, 359 (1972) ("because capital punishment deprives an individual of a fundamental right (i.e., the right to life), . . . the State needs a compelling interest to justify it").

[62] *See Bush*, 531 U.S at 106.  While in traditional claims of discrimination against individuals, courts require evidence of discriminatory intent by a state actor in that particular case, *see, e.g., McCleskey v. Kemp*, 481 U.S. 279 (1987), in *Bush* the Court did not require any such showing.

349. Unlike most states, Georgia has an exceptionally broad definition of murder.
O.C.G.A. 16-5-1 (defining murder as causing the death of another with
"malice aforethought, either express or implied" or causing the death of
another "in the commission of a felony."). There is no crime of "capital
murder" in Georgia as there is in other states, and Georgia does not have
second and third degree murder. O.C.G.A. 17-10-30 (b) sets out ten
aggravating factors, one of which must be found before the death penalty
can be imposed, but those factors are so broad that they apply to virtually
any murder. For example, any murder committed in the commission of
another capital felony, aggravated battery, burglary or arson in the first
degree is death eligible. O.C.G.A. 17-10-30 (b)(2). Any murder committed
for the "purpose of receiving money or any other thing of monetary value"
is death eligible. O.C.G.A. 17-10-30 (b)(4). And a catch-all provision,
subsection (b)(7), allows imposition of the death penalty if the murder was
"outrageously or wantonly vile, horrible, or inhuman in that it involved
torture, depravity of mind, or an aggravated battery to the victim " Thus,
Georgia prosecutors can seek the death penalty in virtually any murder case.
However, Georgia prosecutors do not seek death in the overwhelming
number of eligible cases.

208

350.   Georgia law provides no standards to guide the District Attorneys in their
       decisions as to when to seek the death penalty.  Instead, the prosecutor in
       each circuit makes this decision on his or her own, according to unwritten
       and widely varying standards.  The result is that whether a person charged
       with a capital crime will face the death penalty depends largely on arbitrary
       factors such as the county in which the crime occurred, the quality of the
       court-appointed lawyer for the accused, and, even more disturbingly, the
       race of the victim.[63]

351.   For numerous reasons, the case for which Mr. Presnell was sentenced to
       death is far less aggravated than other cases in which death has been
       imposed, cases in which life imprisonment without the possibility parole has
       been imposed, cases in which life with the possibility of parole has been
       imposed, and even cases that have been resolved with convictions of
       manslaughter and sentences of terms of years have been imposed.

352.   The death sentence was sought and imposed in petitioner's case in an
       arbitrary and disparate manner   Under the United States Supreme Court's
       reasoning in *Bush v  Gore*, such arbitrary deprivation of a fundamental

---

[63] *See McCleskey v. Kemp*, 481 U.S. 279 (1987) (allowing Georgia to carry out
executions even though a person is four times more likely to be sentenced to death
if the victim was white than if the victim was African-American)

constitutional right is simply untenable and requires that his conviction and

death sentence be vacated

## CLAIM XXXVI

### THE VERDICT FORM WAS FATALLY VAGUE AND DEPRIVED PETITIONER OF HIS RIGHTS IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.[64]

353. All other Claims and facts in this Petition are incorporated into this Claim as

if specifically pleaded herein

354. Petitioner was denied his right to a fair trial, due process, equal protection, a

fair and impartial jury, effective assistance of counsel, and a fair and reliable

capital sentencing proceeding, the effective assistance of counsel

throughout all stages of his trial proceedings, by the verdict form and its

vagueness, in violation of his rights as guaranteed under the Fourth, Fifth,

Sixth, Eighth and Fourteenth Amendments to the United States

Constitution, and as such provisions are interpreted in all federal and state

case law citing to, noting, or otherwise relevant to an interpretation of each

---

[64]To the extent that trial counsel failed to object at trial and/or appellate counsel failed to preserve this issue on appeal, they rendered ineffective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution

of these constitutional provisions, as well as any other law set forth throughout the body of this petition   But for the improper verdict form, the outcome would have been different.

355.   The verdict returned by the jury was too vague to satisfy the requirements of the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and analogous provisions of the Georgia Constitution.

356.   The "Finding of Jury as to Alleged Statutory Aggravating Circumstances" reads as follows:

  _X_   We, the Jury, find beyond a reasonable doubt that the offense of murder was committed while the offender was engaged in the commission of another capital felony, kidnaping with bodily injury, the said bodily injury being the aggravated sodomy of Andrea Furlong.

  _X_   We, the Jury, find beyond a reasonable doubt that the offense of murder was:

    _X_ outrageously or wantonly vile, horrible or inhuman in that it involved.

    _X_ torture to the victim before death

__X___        We, the Jury find beyond a reasonable doubt that the offense of

murder was:

   __X___  outrageously or wantonly vile, horrible or inhuman in that it

     involved:

   __X___  depravity of mind of Defendant

This the 16 day of March, 1999.

                s/Victoria Wright

                Foreperson

357   This verdict fails to demonstrate that any aggravating circumstance was

found unanimously by the jury beyond a reasonable doubt.  It is clear from

the verdict that a juror might have found one aggravating circumstance to

exist beyond a reasonable doubt, while doubting the existence of the other,

and vice-versa.

358   This verdict fails to demonstrate that any aggravating circumstance was

found unanimously by the jury beyond a reasonable doubt.

359.  The Fifth, Sixth, Eighth and Fourteenth Amendments of the United States

Constitution and analogous provisions of the Georgia Constitution required

in this capital case that the decision to impose death be reflected clearly and

unambiguously in factual findings made by the jury   This was not done

212

360. It is insufficient for a verdict to reflect unanimity only as to the ultimate
     outcome and the appropriateness of the death penalty.  The verdict must
     also reflect unanimity as to the underlying facts supporting the decision.
     *See, e.g., United States v. Gipson*, 553 F 2d 453, 456-57 (5th Cir. 1977);
     *United States v. Balistrieri*, 779 F.2d 1119, 1124 (7th Cir. 1985).

361. In a capital case, every fact necessary to support the sentence of death is an
     "element" of capital murder, and must be found by a jury, unanimously, and
     beyond a reasonable doubt.  *See  Apprendi v. New Jersey*, 530 U.S. 466,
     490 (2000) (holding that jury cannot constitutionally be relieved of its duty
     to find, beyond a reasonable doubt, all facts which "increase[] the penalty
     for a crime beyond the prescribed statutory maximum"); *Ring v. Arizona*,
     536 U.S. 584 (2002) (applying *Apprendi* principles to capital sentencing
     phase, and requiring jury findings of all capital sentencing elements [such as
     aggravating circumstances under Georgia law] unanimously and beyond a
     reasonable doubt)

362. Prior to *Ring* and *Apprendi*, the Court had previously held in *Jones v.
     United States*, 526 U.S. 227, 251-52 (1999), that the Fifth Amendment
     requires that all elements of a federal offense be "charged in the indictment,
     submitted to a jury, and proven by the Government beyond a reasonable

213

doubt." As the Court has made clear since <u>Jones</u>, an "element" for purposes of constitutional analysis is any "fact[] necessary to impose the maximum [punishment]." *Harris v. United States*, 536 U.S. 545, 566 (2002)

363. Here, the jury was not required to find affirmatively the existence of either statutory aggravating circumstance unanimously and beyond a reasonable doubt.

364. In *Apprendi v. New Jersey*, 530 U.S. 466, (2000), the Supreme Court held that when a specified factual finding may enhance a sentence beyond the otherwise prescribed maximum, that finding must be made by a jury and must be found to exist beyond a reasonable doubt. If it is true that the jury here was never required to make the factual findings unanimously and beyond a reasonable doubt, then there has been no appropriate jury finding as to the existence of a fact which enhanced the punishment beyond the otherwise maximum sentence, in violation of *Apprendi*.

365. In *Apprendi*, a state criminal firearms possession case, the Supreme Court reviewed the constitutionality of a New Jersey statute providing for an enhanced punishment so long as a judge found by a preponderance of the evidence that the defendant committed the underlying offense with a purpose to intimidate others because of race, color, etc. 530 U.S at 467

Interpreting the Due Process Clause, the Court held that the factual determination (that the crime was committed with the unlawful racial purpose) authorizing an increase in the maximum punishment must be made by a jury: "[A]ny fact," the Court held, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id* at 490.  The Court declared that it was unconstitutional to remove from a jury's determination the existence of a fact which, "if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* at 483.

366.   In reaching that conclusion, the Court noted that "New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race." *Id.* at 476.  Labeling the latter as mere "sentence enhancement" did not address the underlying due process concerns arising from the distinct and additional punitive consequences flowing from a finding thereof.  Responding to arguments made by the State of New Jersey that the enhancement provision merely inquired into "motive," a traditional

215

"sentencing factor," the Court rejected the conclusion that it therefore did

not require a jury determination:

> It makes no difference in identifying the nature of this
> finding that Apprendi was also required, in order to receive
> the sentence he did for [the underlying] weapons
> possession, to have possessed the weapon with a "purpose
> to use [the weapon] unlawfully against the person or
> property of another."   A second mens rea requirement
> hardly defeats the reality that the enhancement statute
> imposes of its own force an intent requirement necessary
> for the imposition of sentence.... The defendant's intent in
> committing a crime is perhaps as close as one might hope
> to come to a core criminal offense "element.

*Id.* at 492-493.  As such, like any element of an offense, even if applied to

enhance the maximum punishment, the Court held the enhancement intent

factor must be found to exist by a jury and beyond a reasonable doubt

367.  These principles clearly apply directly to Georgia's statutory aggravating

circumstances.  First, the requisite finding of a statutory aggravating factor

is one "that increases the penalty for a crime beyond the prescribed statutory

maximum."  *Apprendi, supra.*  Absent such a finding, the maximum

available sentence is life imprisonment.

368.  Second, the jury was relieved of any responsibility for making this  factual

finding unanimously and beyond a reasonable doubt in this case, due to the

vagueness in the verdict form

369. Third, under *Apprendi*, a post-trial, judicial (*i.e.* non-jury) determination of the facts cannot cure the error here. *Apprendi* turns on the very fact that a judge, not a jury, was allowed to make an evidentiary determination about critical sentence-determinative facts regarding the defendant's intentionality. The Court in *Apprendi* and *Ring* expressly held that such judge-determination of these facts was unconstitutional. So too here, the jury was precluded by the trial court's erroneous verdict form from determining sentence-enhancing facts regarding the crime. Under *Apprendi* and *Ring*, judicial determination of such facts, even on appeal, is impermissible.

370. The verdict form in this case, and the jury's use thereof, thus violated petitioner's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and his death sentence should, therefore, be set aside.

## CLAIM XXXVII

**THE TRIAL COURT ERRONEOUSLY PERMITTED THE PROSECUTION TO INTRODUCE SUBSTANTIAL INFLAMMATORY AND PREJUDICIAL SO-CALLED "VICTIM IMPACT" TESTIMONY, VIOLATING PETITIONER'S RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, A FAIR TRIAL, EQUAL PROTECTION, AND A FAIR AND RELIABLE CAPITAL SENTENCING PROCEEDING, IN VIOLATION OF THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.[65]**

371. All other Claims and facts in this Petition are incorporated into this Claim as if specifically pleaded herein.

372. In *Booth v. Maryland*, 482 U.S. 496 (1987), the United States Supreme Court declared unequivocally that the character or "worth" of the victim, and the "impact" of the crime on the surviving relatives and friends of the victim, are not appropriate considerations for the jury in a capital case. *Accord Grossman v. State*, 525 So.2d 833 (Fla. 1988); *Fuselier v. State*, 468 So.2d 45 (Miss. 1985).

---

[65]To the extent that trial counsel failed to object at trial and/or appellate counsel failed to preserve this issue on appeal, they rendered ineffective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

373. In *Payne v. Tennessee*, the Supreme Court overturned *Booth v. Maryland*, and *South Carolina v. Gathers*, 490 U S. 805 (1989), to decide that the Eighth Amendment does not prohibit admission of victim impact evidence at the penalty phase of a capital trial. In banning victim impact evidence, the *Booth* Court had concluded that the introduction of such evidence violated two Eighth Amendment requirements for capital sentencing proceedings: the need for "heightened reliability," and the need for an "individualized determination" based on the "character of the [defendant] and the circumstances of the crime." *Booth*, 482 U.S at 502, *citing Zant v. Stephens*, 462 U.S. 862 (1983). Victim impact evidence, the Court reasoned in *Booth*, is irrelevant to the individualized consideration of the defendant's guilt, and "its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id*

374. The *Payne* Court disagreed, finding that *Booth* "unfairly weighted the scales in a capital trial," 501 U.S. at 822:

> [W]hile virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances, the State is barred from either offering 'a glimpse of the life' which a defendant 'chose to extinguish,' or demonstrating the

219

> loss to the victim's family and to society which has
> resulted from the defendant's homicide.

*Id., citing Mills v. Maryland*, 486 U.S. 367, 397 (1988) (Rehnquist, J.,

dissenting). On this basis, the Court held that "if the State chooses to permit

the admission of victim impact evidence and prosecutorial argument on that

subject, the Eighth Amendment erects no per se bar." *Id.* at 827. The Court

dismissed *Booth*'s concerns that victim impact evidence would invite

arbitrary and capricious, emotion-driven sentencing, noting that "in the

event that evidence is introduced that is so unduly prejudicial that it renders

the trial fundamentally unfair, the Due Process Clause of the Fourteenth

Amendment provides a mechanism for relief." *Id.* at 825. *See also id.* at

836 (Souter, J., concurring) ("there is a traditional guard against the

inflammatory risk [of victim impact testimony], in the trial judge's authority

and responsibility to control the proceedings consistently with due process,

on which ground defendants may object and, if necessary, appeal").

375. In permitting the introduction of limited victim impact evidence – which

"offer[s] 'a glimpse of the life' which a defendant 'chose to extinguish,' or

demonstrat[es] the loss to the victim's family and to society which has

resulted from the defendant's homicide," 501 U.S. at 822 (emphasis

supplied) – the Court did not intend to eviscerate the capital defendant's

Eighth Amendment rights to a reliable, individualized sentencing

determination.  Nor did it intend for a capital sentencing proceeding to

become a contest between the worth of the victim and that of the

defendant.[66]  It sought instead to strike a balance between victim impact

evidence and the defendant's Eighth Amendment rights.  Such a balance is

to be safeguarded by the trial court's "authority and responsibility to control

the proceedings consistently with due process." 501 U.S. at 836, to restrict

---

[66] In responding to Payne's concern that the comparative worth between victim and defendant should not be a relevant capital sentencing factor, the Court stated:

> As a general matter, however, victim impact evidence is not offered to encourage comparative judgments of this kind – for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not  It is designed to show instead each victim's "uniqueness as an individual human being," whatever the jury might think the loss to the community resulting from his death might be

501 U.S 808, 823-24.  In a case like the present one. however, given the extent and detail of the prosecution's evidentiary presentation regarding the victims and their families, and given Mr Presnell's obviously lower class status in society compared to that of the victims and their families, there was no way to avoid "comparative judgments," regardless of the State's intent.  In such a circumstance, to avoid precisely what the Court in *Payne* condemned, the trial court was duty-bound to take extra precautions, holding a pre-trial hearing and entering an order limiting the scope of the State's victim impact presentation

221

the presentation of victim impact evidence sufficiently that the emotion
inherently associated with such evidence does not overwhelm the jury's
responsibility to make a reliable, individualized sentencing determination
based on a full and fair consideration of the mitigating and other
aggravating circumstances.

376.   Notwithstanding the dramatic shift in the law occasioned by its holding,
*Payne* provided virtually no guidance for determining the scope of
appropriate victim impact evidence, and even less for determining when that
evidence is unduly prejudicial.

377.   Other jurisdictions have wrestled with the implementation of <u>Payne</u>'s
allowance for some victim impact testimony while simultaneously
protecting the defendant's right to individualized sentencing and the
avoidance of arbitrariness and emotion.  The most instructive case comes
from the Louisiana Supreme Court, *State v. Bernard*, 608 So.2d 966 (La.
1992).  In *Bernard*, the court fashioned a cautionary principle which, if
adhered to closely, might prevent the victim impact evidence from
overwhelming the sentencing process

> [I]ntroduction of detailed descriptions of the good qualities
> of the victim or particularized narrations of the           .
> sufferings of the victim's survivors, which go beyond the

> purpose of showing the victim's individual identity and
> verifying the existence of survivors reasonably expected to
> grieve and suffer because of the murder, treads dangerously
> on the possibility of reversal because of the influence of
> arbitrary factors on the jury's sentencing decision.

608 So.2d at 972. Other courts have similarly adopted a cautious approach

to the admission of victim-impact evidence  *See, e.g., State v. Muhammad,*

145 N.J. 23, 45-48, 678 A.2d 164, 175-177 (1996); *Cargle v. State,* 909

P.2d 806, 830 (Okla 1995), *cert. denied,* 117 S Ct. 100 (1996).

378.  In petitioner's case, the trial court allowed the prosecution to present

"victim impact" evidence that went well beyond any reasonable

interpretation of the bounds of *Payne. See also Turner v. State,* 268 Ga.

213, 486 S E.2d 839 (1997).  Moreover, the procedure followed in this case

veered substantially from the recommended one set forth by the Georgia

Supreme Court in *Turner,* with the resulting consequence being the

introduction of evidence which clearly violated *Payne* and thereby rendered

petitioner's trial fundamentally unfair.  So-called "victim impact" witnesses

were allowed to testify about the facts of the crime itself, as well as give

graphic accounts of the injuries inflicted upon the victims, including from

an actual medical doctor   Also, a surviving victim and her family was

allowed to testify about the impact of the crime on her and her family, even

though her victimization (and the sentence for such crime) was not the subject of the capital sentencing trial for which petitioner stood to face the death penalty. Thus the trial court's permissiveness in allowing the victims and family members and others not only read statements, but also provide lengthy prejudicial testimony. ultimately made the trial an emotionally charged three ring circus, a consequence *Payne* expressly did not intend.

379. The prosecution's resulting reliance upon all of this evidence through repeated references to characteristics of the victims in opening and closing arguments, violated petitioner's rights to a fair trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## CLAIM XXXVIII

**THE TRIAL COURT'S RESTRICTIONS ON VOIR
DIRE DEPRIVED PETITIONER OF HIS RIGHTS
TO A FAIR AND IMPARTIAL JURY, EFFECTIVE
ASSISTANCE OF COUNSEL, DUE PROCESS, AND
EQUAL PROTECTION IN VIOLATION OF THE
SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES
CONSTITUTION.[67]**

380   All other Claims and facts in this Petition are incorporated into this Claim as

if specifically pleaded herein.

381.   The trial court's restrictive actions during voir dire, as well as its unequal

treatment of the defense as against the prosecution during voir dire, denied

to petitioner the effective assistance of counsel, a fair trial by a fair and

impartial jury, due process, equal protection, and a fair and reliable capital

sentencing proceeding throughout all stages of his trial proceedings, in

violation of his rights as guaranteed under the Fourth, Fifth, Sixth, Eighth

and Fourteenth Amendments to the United States Constitution, and as such

provisions are interpreted in all federal and state case law citing to, noting,

or otherwise relevant to an interpretation of each of these constitutional

---

[67]To the extent that trial counsel failed to object at trial and/or appellate counsel
failed to preserve this issue on appeal, they rendered ineffective assistance of
counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution.

provisions, as well as any other law set forth throughout the body of this petition. But for the trial court's unlawful the outcome would have been different.

382. Prior to voir dire, the trial court struck a number of potential questions proposed by defense counsel. The questions struck by the court were appropriate and unobjectionable. The court's rulings refusing to allow defense counsel the opportunity to ask such questions violated petitioner's right to fair and impartial jury, due process, equal protection, access to the courts, effective assistance of counsel and the right to be free from cruel and unusual punishments.

383. Georgia law provides that voir dire of prospective jurors shall be thorough and searching, to enable counsel for the parties to intelligently and effectively exercise peremptory challenges. Specifically, O.C.G.A. §15-12-133 states that

> In the examination, the counsel for either party shall have the right to inquire of the individual jurors examined touching any matter or thing which would illustrate any interest of the juror in the case, including any opinion as to which party ought to prevail, the relationship or acquaintance of the juror with the parties or counsel therefore, any fact or circumstance indicating any inclination, leaning, or bias which the juror might have respecting the subject matter of the action or the counsel or

226

parties thereto, and the religious, social, and fraternal connections of the juror.

384. The Georgia Supreme Court has held that this Code section "is generally considered as permitting a broad range of questions in examination of prospective jurors." *Henderson v. State*, 251 Ga. 398, 400, 306 S.E.2d 645 (1983) (quoting *Bentley v. State*, 235 Ga. 371, 377, 219 S.E.2d 743 (1975)).

385. The right to a probing voir dire is also protected under federal law. A defendant must be able to "ascertain the possibility of bias through probing voir dire," and thus more intelligently exercise his challenges. *Swain v Alabama*, 380 U.S. 202 (1965). The trial court's discretion to control voir dire is limited by "the essential demands of fairness." *Aldridge v. United States*, 283 U.S 308, 310 (1931). That discretion is abused if the questioning is "not reasonably sufficient to test the jury for bias or partiality." *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979).

## CLAIM XXXIX

**THE TRIAL COURT VIOLATED PETITIONER'S
RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS OF THE
UNITED STATES CONSTITUTION BY
EXCUSING FOR CAUSE JURORS WHOSE
VIEWS ON THE DEATH PENALTY WERE NOT
EXTREME ENOUGH TO WARRANT
EXCLUSION UNDER *WITHERSPOON V.
ILLINOIS*, 391 U.S. 510 (1968).[68]**

386.   All other Claims and facts in this Petition are incorporated into this Claim as

if specifically pleaded herein

387.   The trial court's ruling on voir dire with respect to excusing or not excusing

potential jurors for cause based on their views on the death penalty denied

petitioner the effective assistance of counsel, a fair trial, due process, a fair

and impartial jury, equal protection, and a fair and reliable capital

sentencing proceeding, in violation of his rights as guaranteed the Fourth,

Fifth, Sixth, Eighth and Fourteenth Amendments to the United States

Constitution, and as such provisions are interpreted in all federal and state

case law citing to, noting, or otherwise relevant to an interpretation of each

---

[68]To the extent that trial counsel failed to object at trial and/or appellate counsel
failed to preserve this issue on appeal, they rendered ineffective assistance of
counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution.

of these constitutional provisions, as well as any other law set forth throughout the body of this petition. But for the trial court's rulings, the outcome would have been different.

388. The trial court violated petitioner's constitutional rights by excusing for cause potential jurors whose views on the death penalty were not extreme enough to warrant exclusion. A capital defendant's right to an impartial jury prohibits the exclusion of venire members "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770 (1968). To permit the exclusion for cause of prospective jurors based on their views of the death penalty unnecessarily narrows the cross section of venire members. It "stack[s] the deck against the [defendant]." *Gray v. Mississippi*, 481 U.S. 648, 658 (1987) (*quoting Witherspoon*, 391 U.S. at 523).

389. The exclusion of venire members based on their views concerning the death penalty must be limited to those who are "irrevocably committed...to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings," and to those whose "attitude toward the death penalty would prevent them from making an

229

impartial decision on the question of guilt." *Witherspoon*, 391 U.S. at 523 n.21; *see also Burns v. Estelle*, 626 F 2d 396, 397 (5th Cir. 1980). "[T]hose who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law " *Lockhart v. McCree*, 476 U.S. 162, 176 (1986).

390.    When a trial court misapplies *Witherspoon* and excludes from a capital jury a prospective juror who in fact is qualified to serve, a death sentence cannot stand. *Davis v. Georgia*, 429 U.S. 122 (1976) (*per curiam*).  Because the trial court improperly excused for cause venire members who were qualified to be seated as jurors under *Witherspoon*, petitioner has been denied his right to a fair trial and impartial jury in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.
*Witherspoon*, 391 U.S. at 52.

## CLAIM XL

**ANY SUB-SET OF THE CLAIMS CONTAINED IN THIS PETITION AND/OR IN ANY FURTHER PETITION TO BE FILED, AND/OR ALL SUCH CLAIMS COMBINED RESULTED IN A TRIAL AND APPEAL THAT WAS FUNDAMENTALLY UNFAIR, IN VIOLATION OF PETITIONER'S RIGHTS AS GUARANTEED UNDER THE FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.[69]**

391.  All other Claims and facts in this Petition are incorporated into this Claim as if specifically pleaded herein.

392.  Petitioner's re-sentencing trial was fraught with legal and constitutional error.  Even if no single error set forth herein amounts to reversible error, any sub-set of the claims and facts presented herein, as well as all such claims and facts presented herein, when considered together, violate petitioner's rights as guaranteed under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and as such provisions are interpreted in all federal and state case law citing to, noting, or otherwise relevant to an interpretation of each of these constitutional

[69]To the extent that trial counsel failed to object at trial and/or appellate counsel failed to preserve this issue on appeal, they rendered ineffective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

231

provisions, as well as any other law set forth throughout the body of this petition. But for the combination of any such error or set of errors, the outcome would have been different

393. Any single claim in this petition or in any further petition to be filed in this case warrants the grant of habeas corpus relief in this case.

394. In addition, however, any sub-set of the claims worked to deprive petitioner of a fundamentally fair trial and sentencing proceeding and/or motion for new trial and/or direct appeal and therefore warrants the grant of habeas corpus relief irrespective of whether the Court determines that any single claim warrants such relief.

395. Finally, all of the claims set forth in this petition and/or to be filed in any further petition, when combined together, warrant the grant of habeas corpus relief irrespective of whether the Court determines that any single claim or any sub-set of the claims warrants such relief.

396. In light of the record before this Court, it is clear that the evidence does not support the jury's final determination, and that the aggregate effect of all of the errors set forth in this petition and found upon an independent review of the record by this Court warrants the setting aside of petitioner's sentence of death because the sentence was imposed in violation of petitioner's rights

232

under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and analogous provisions of the Georgia Constitution.

## IV. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Court:

1.     Issue a writ of habeas corpus to have Petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint, and/or be relieved of his unconstitutional sentence of death;

2.     Conduct an evidentiary hearing at which proof may be offered concerning the allegations of this petition;

3.     Permit Petitioner, who is indigent, to proceed in forma pauperis,

4.     Grant Petitioner, who is indigent, sufficient funds to secure the expert testimony necessary to prove the facts as alleged in this petition;

5.     Allow discovery, pursuant to Rule 6, Rules Governing Section 2254 Cases In the United States District Court;

6.     Grant Petitioner the authority to obtain subpoenas in forma pauperis for witnesses and documents necessary to prove the facts as alleged in this petition,

7.     Allow Petitioner to amend this petitioner after the assistance of experts and discovery;

233

8.     Allow Petitioner a period of ninety (90) days, which period shall commence

after the completion of any hearing this Court shall determine to conduct, in which

to brief the issues of law raised by this petition;

9.     Grant such other relief as may be appropriate.

This the ____ day of June, 2007.


                                        Respectfully submitted,


                                        _____
                                        MARY ELIZABETH WELLS[70]
                                        Federal Defender Program, Inc.
                                        100 Peachtree Street, Suite 1700
                                        Atlanta, Georgia 30303
                                        (404) 688-7530
                                        Georgia Bar No. 747852


---

[70]Undersigned counsel, Ms. Wells, is resigning from the Federal Defender
Program, Inc.  Ms. Wells has filed this petition as she was the person who has
been responsible for the case and for drafting and filing the federal petition, and
no other person in the office is familiar with the case.  Another attorney in the
Federal Defender Program will take over responsibility for Mr. Presnell's case and
the Federal Defender Program will file the appropriate paperwork with the Court
to change the name of the attorney.

234

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon

Respondent by first class mail, postage prepaid, at the address below:

>       Beth Burton
>       Assistant Attorney General
>       Office of Attorney General
>       132 State Judicial Building
>       40 Capitol Square, S.W.
>       Atlanta, Georgia 30334

This the 1st day of June,  2007.

_____
Counsel for Petitioner